IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Svitlana Wallace, individually and
as Parent and Next Friend of
A.W., a Minor, and
Michael Wallace, individually,

      Plaintiffs,

vs.                                          NO. _____

Robert Holguin in his individual           JURY TRIAL DEMANDED
Capacity, Oscar Magallanes, in his
individual Capacity, Marvin Kelly, in his
individual Capacity, Joshua Milks, in his
individual capacity,  and
The City of Las Cruces,

      Defendants.

## COMPLAINT FOR THE RECOVERY OF DAMAGES
## CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS AND JURY TRIAL DEMAND

COMES NOW, the Plaintiffs, by and through their attorneys, McGraw & Strickland, LLC, (Margaret Strickland), and in support of their Complaint against Defendants states the following upon knowledge, information and belief:

### JURISDICTION AND VENUE

1.  Jurisdiction and venue are proper in the Federal District Court of New Mexico.

2.  All parties reside in New Mexico and the acts complained of occurred exclusively within Dona Ana County, New Mexico.

3.  This is a civil rights claim brought pursuant to 42 USC 1983 and 42 USC 1988; therefore, this Court also has jurisdiction over this action pursuant to 28 USC 1343. This Court also

has supplemental jurisdiction over the state tort claims pursuant to 28 USC 1367 because the acts alleged herein arise out the same transaction or occurrence and/or series of transactions or occurrences.

PARTIES

4.    Plaintiff Svitlana Wallace is an individual who resides in Las Cruces, Dona Ana County, New Mexico.

5.    Plaintiff Michael Wallace is an individual who resides in Las Cruces, Dona Ana County, New Mexico.

6.    Plaintiff A.W. is a minor who resides in Las Cruces, Dona Ana County, New Mexico.

7.    Defendant Robert Holguin is an individual employed by the Las Cruces Police Department.

8.    Defendant Oscar Magallanes is an individual employed by the Las Cruces Police Department.

9.    Defendant Marvin Kelly is an individual employed by the Las Cruces Police Department.

10.    Defendant, the City of Las Cruces (hereinafter "the City"), is an incorporated municipality located in Dona Ana County, New.

11.    Defendant Officers are sued in their individual capacity.

12.    At all times pertinent, Defendant Officers were acting in the course and scope of their employment and under color of state law.

13. On April 18, 2016, Plaintiffs notified the City of Las Cruces and the Las Cruces Police Department of the violations alleged herein against Plaintiffs, pursuant to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-16.

## FACTUAL BACKGROUND

14. On February 18, 2016, Plaintiff Svitlana Wallace was at her residence located at 3919 Agua Caliente in Las Cruces.

15. At that time Plaintiff Svitlana Wallace was a 36-year-old wife and mother of two with no criminal history.  She was also visibly pregnant, in the second trimester, with her third child.

16. At the time Plaintiff Svitlana Wallace lived with her husband, Plaintiff Michael Wallace, and her two minor children, including Plaintiff A.W.

17. On February 18, 2016, Officer Magallanes was dispatched to a "Cash Store" at 3340 Riconada Boulevard in Las Cruces in reference to a call about potential domestic violence occurring in the store.

18. Dispatch told Officer Magallanes that neither party was still at the Cash Store and provided a possible address of the alleged victim/suspect of 3919 Agua Caliente, Las Cruces, NM.

19. Officer Magallanes then went to 3919 Agua Caliente, which is in a quiet residential neighborhood.

20. On the way to the home on Agua Caliente, Officer Magallanes spotted an unknown man whom he thought might possibly be one of the involved parties.  The man was on Agua Caliente, but several dozen yards away from 3913 Agua Caliente.

21. Officer Magallanes then called for an additional officer to talk to the unknown man and

prevent him from coming to the 3913 Agua Caliente home.

22. Officer Holguin responded to that call, and when he arrived on scene he identified the unknown male as Plaintiff Michael Wallace and detained him.

23. Plaintiff Michael Wallace assured Officer Holguin that everything was okay and told the officer that there was no battery.

24. Officer Kelly then arrived on scene and took over the detention of Plaintiff Michael Wallace.

25. Officer Kelly ordered Plaintiff Michael Wallace to sit on the curb.   Officer Kelly continued to order Plaintiff Michael Wallace around and continued restrain Plaintiff Michael William's movements.

26. Plaintiff Michael Wallace told the officers that his wife was from Ukraine, and that she was especially afraid of officers coming into the home because of the way officers disappear people from their homes in Ukraine.

27. Plaintiff Michael Wallace told the officers that he and his family were also afraid of the officers because the family had recently filed a complaint against Las Cruces Police Department Officers.

28. Plaintiff Michael Wallace told the officers his wife is prone to panic attacks, and that his wife's pregnancy was high risk.

29. After Officer Kelly arrived, Officer Holguin then went to assist Officer Magallanes.

30. Once at 3913 Agua Caliente, Officer Magallanes heard people inside and he knocked on the front door loudly for several minutes. Officer Magallanes tried several times to get the people inside the residence to open the door, but they refused to answer the door or come out and speak with the officers.

31. For several minutes, Officer Magallanes continued to knock loudly on the front door, loudly identify himself as a police officer, and demand the door be opened.

32. Finally, Plaintiff A.W. responded to Officer Magallanes and answered the door.

33. Officer Magallanes told Plaintiff A.W. to go inside and get her mother Plaintiff Svitlana Wallace.

34. Plaintiff A.W. told the officers she did not want to go get her mother, but Officer Magallanes ordered Plaintiff A.W. go get her mother.

35. Plaintiff A.W. then went back inside and closed the door.  She did not retrieve her mother as ordered by Officer Magallanes.

36. Officer Magallanes continued to speak to other officers on the radio, and he mentions he knows the Wallace family has complained about officers from the Las Cruces Police department in the past.

37. Officer Magallanes then began again knocking the door very loudly, identifying himself as a police officer, and ordering the Wallaces open the door immediately.

38. Officer Magallanes then learned from Officer Kelly that Plaintiff Svitlana Wallace has spoken to her husband Plaintiff Michael Wallace by phone and that Plaintiff Svitlana Wallace does not want to come out and that she feels Officer Magallanes is trying to break into her home.

39. Officer Magallanes radios back telling Officer Kelly to let Plaintiff Svitlana Wallace know that if she does not answer the door she will be charged with resisting an officer.

40. Officer Magallanes then repeatedly yelled into the home that Plaintiff Svitlana Wallace had to come out and talk to him or she would be arrested for obstruction.

41. After the repeated threats, Plaintiff A.W. came to the door again, followed by her mother

Plaintiff Svitlana Wallace.

42. Plaintiff Svitlana Wallace told Officer Magallanes in no uncertain terms that he was trespassing on her property, that he was harassing her and her family, and that he was trying to break into her home.

43. Plaintiff Svitlana Wallace repeatedly told the officers she was not going to allow officers into her home.

44. Instead of leaving Plaintiff Svitlana Wallace and her family alone or seeking a warrant, Officer Magallanes told Plaintiff Svitlana Wallace that she was required to talk to the officers before they would leave her home.

45. Officer Magallanes realized that Plaintiff Svitlana Wallace was speaking with her husband Plaintiff Michael Wallace.  Officer Magallanes then told Officer Kelly to take the phone away from Plaintiff Michael Wallace so he could not speak to his wife.

46. Plaintiff Svitlana Wallace told her daughter Plaintiff A.W. to close the door, however Officer Magallanes had brazenly and unlawfully put his foot in the door to prevent the Wallace family from closing the door to their own home.

47. Officer Magallanes kept his foot in the doorway even when Plaintiff Svitlana Wallace asked him to more it.  Plaintiff A.W. was threatened with charges if she tried to close the door while Defendants Magallanes' foot was in it.

48. Officer Magallanes pushed the door back open after Plaintiff A.W. tried to close it.

49. Plaintiff A.W. told Officer Magallanes he could not come into her home, but Officer Magallanes physical resisted Plaintiff A.W. attempting to close the door to her own door.

50. Officer Holguin then arrived at the Wallace's home.

51. Officer Holguin told Plaintiff A.W. not to close the door on Officer Magallanes, and

Officer Magallanes told Plaintiff Svitlana Wallace to come out immediately or she would be arrested for obstructing and resisting.

52. Plaintiff Svitlana Wallace did not obey those commands.

53. Plaintiff Svitlana Wallace continued to tell the officer to leave the home, that she was fine, and that the officers were not allowed to be there.

54. Officer Magallanes threated to arrest Plaintiff A.W. if she closed the door.

55. Plaintiff Svitlana Wallace told Officer Magallanes that the only reason she came to the door was because of the officer's threats.

56. Plaintiff Svitlana Wallace told the officers that she didn't want to go outside in what she was wearing – pink pajamas.

57. Plaintiff Wallace told the officers that she had high blood pressure and that her legs did not work properly.

58. Officer Magallanes could see that Plaintiff Svitlana Wallace was pregnant.

59. Officer Magallanes told Svitlana Wallace that if she did not comply with his commands and come out or allow the officer into her home she would be arrested for resisting evading or obstructing an officer.

60. The officers had no other ground for arrest at the time.

61. The officers had no warrant for arrest.

62. The officers had no exception to the warrant requirement for intrusion into a home.

63. When Plaintiff Svitlana Wallace told the officers she had rights, the officers told her she had no rights at that time.

64. Plaintiff Svitlana Wallace did not obey Officer Magallanes orders to come out or allow the officers into her home, and Officer Magallanes and Officer Holguin then entered

Plaintiff Svitlana Wallace's home to arrest her.

65.    During the arrest the officers pulled Plaintiff Svitlana Wallace's hands away from her body while she tried to protect her unborn baby by holding her pregnant belly.

66.    Officers used force to handcuff Plaintiff Svitlana Wallace, including pain compliance techniques.

67.    Plaintiff Svitlana Wallace yelled and cried out for help as the officers attacked her in her own home, and she told Officer Holguin, who was using a wrist-pain compliance technique on her, that Officer Holguin was breaking her wrist.

68.    Plaintiff A.W. was seated next to her mother on the couch and tried to help her mother by asking the officers not to arrest her.

69.    Officer Milks, another responding officer who entered the Wallace home without a warrant, then forcibly grabbed and held Plaintiff A.W. and ordered her to move away.

70.    Officer Magallanes and Officer Holguin forcibly removed Plaintiff Svitlana Wallace from her own home.

71.    While being forcibly arrested, Plaintiff Svitlana Wallace asked her daughter Plaintiff A.W. to go get help.

72.    Plaintiff A.W. went to a neighbor to get help.  That neighbor latter asked the officers what happened, but the officer refused to give him any information.

73.    Plaintiff Svitlana Wallace continued to yell and cry for help as she was dragged to and placed into the police car.

74.    Plaintiff Svitlana Wallace called out to her husband to help her and to call her doctor.

75.    All involved officers knew that Plaintiff Svitlana Wallace would have to spend the night in detention because bonds are not set until the next day.

76. After Plaintiff Svitlana Wallace was forced out of her home, Officer Milks used his body to keep Plaintiff A.W. from walking towards her mother or entering her home. Officer Milks loudly ordered Plaintiff A.W. to sit in a chair outside and threatened to handcuff her.

77. Officer Milks told Plaintiff A.W that she was not allowed back inside of her own home and forcibly grabbed her. Officer Milks then yelled at the top of his lungs that Plaintiff A.W. was under arrest for resisting an officer and ordered her to sit down and not to get up.

78. Officer Milks continued to unlawfully detain Plaintiff A.W., by ordering she sit in a chair outside her home and not allowing her to go back inside.

79. Plaintiff A.W. complained to Officer Milks that he had grabbed her without permission, and Officer Milks replied "do you see what this is [pointing to his badge]. I don't need permission to touch you."

80. Officer Milks asked Plaintiff A.W. for her information, and when she tried to decline to give then information, she was threatened again with arrest for "concealing identity" and said Plaintiff A.W. would then have to spend the night in jail.

81. Under the threat of arrest, Officer Milks also asked Plaintiff A.W. what school she went to, what grade she was in, what her phone number was, if she had a job, and asked for more details about what had happened between her parents at the cash store.

82. Officer Milks taunted Plaintiff A.W., a teenager, saying that the resisting charge was going to hurt her future school and career plans.

83. Officer Milks told Plaintiff A.W. that she was being charged for resisting arrest for not moving off the couch, and that the "only" reason he did not throw her to the ground was

because she was holding her two-year old baby sister.

84.    Officer Magallanes also threatened to reenter Plaintiff A.W.'s home again without a warrant in order to question her.  When Plaintiff A.W. told them not to come into her home without a warrant, Officer Magallanes said to Plaintiff A.W. "we will go in [to your house] with a warrant or not."

85.    Officer Milks put his hand in Plaintiff A.W.'s face and told her to be quiet while she was voicing her concerns about the officer's actions.

86.    Officer Milks then again taunted Plaintiff A.W. about her mother being arrested and charged with a crime.

87.    Officer Milks cited Plaintiff A.W. for resisting, evading, or obstructing an officer.

88.    Only after arresting Plaintiff Svitlana Wallace did Officer Magallanes call the initial reporting witness to find out more details about the call, including a physical description of the suspects.

89.    Plaintiff Svitlana Wallace told Officer Magallanes that her stomach area and wrist hurt.

90.    Plaintiff Svitlana Wallace later reported pain on her wrists/hands from handcuffing, her back from the brutal arrest, and her face/head from force used during the arrest.

91.    It is evident the officers in this case had not been properly trained in accordance with state and federal law regarding warrants, lawful exceptions to the warrant requirement, detention, arrest, threats, malicious abuse of process, New Mexico's resisting, evading, and obstruction statute, New Mexico's concealing identity statute, and use of force against civilians.

COUNT I: TORT CLAIMS

(FALSE IMPRISONMENT, BATTERY, AND MALICIOUS ABUSE OF PROCESS)

92.    Plaintiffs allege and reassert all prior paragraphs of this Complaint as though fully set forth herein.

93.    At all times material hereto, Defendants Magallanes, Holguin, Milks, and Kelly act acted as public employees, within the scope of their duties, and under the color of state law.

94.    All plaintiffs have clearly established rights guaranteed under Article II, Sec. 10 of the New Mexico Constitution to be free of the use of excessive force and to be free from unreasonable seizure.

95.    Plaintiff Svitlana Wallace and Plaintiff A.W. have clearly established rights to be free from malicious abuse of process.

96.    Defendant Magallanes and Holguin caused personal injury and bodily injury to Plaintiff Svitlana Wallace when they battered her by using force against her during arrest, including the use of pain compliance methods.

97.    Defendants Milks battered Plaintiff A.W. when he used force to detain her.

98.    Neither Plaintiff Svitlana Wallace or A.W. used force against any of the officers.

99.     Neither Plaintiff Svitlana Wallace or A.W. were a flight risk or danger to the public.

100.    Neither Plaintiff Svitlana Wallace or A.W. committed a crime.

101.    Neither Plaintiff Svitlana Wallace or A.W. resisted arrest/detention.

102.    Defendants did not have probable cause to arrest Plaintiff Svitlana Wallace.

103.    Defendants did not have legal cause to detain Plaintiff A.W. or Michael Wallace.

104. The Defendants misused the legal process by charging Plaintiff Svitlana Wallace and Plaintiff A.W. with resisting, evading, or obstructing an officer, with the primary goal of accomplishing an illegitimate end.  The Plaintiffs were successful in their criminal cases, neither being convicted.

105. The Defendants waived immunity protection pursuant to NMSA 41-4-4; NMSA 41-4-12. when they caused personal and bodily injury to Plaintiffs.

106. City of Las Cruces is liable for the conduct of its employees acting in the course and scope of their employment and is not immune to claims from damages associated with these claims, pursuant to the New Mexico Tort Claims Act.

107. The conduct of Defendants was a direct and proximate cause of Plaintiffs' injuries.

108. Plaintiffs are entitled to recover from Defendants their damages, costs resulting from Defendants' violations, including pre and post-judgment interest, and any such other relief the court may deem just and proper.

## COUNT II:  FOURTH AMENDMENT CLAIMS
## (UNREASONABLE SEIZURE, EXCESSIVE FORCE, AND SECURITY OF THE HOME)

109. Plaintiffs allege and reassert all prior paragraphs of this Complaint as though fully set forth herein.

110. All Plaintiffs have a Fourth Amendment right to be free from arrests and/or detention except when there is legal cause.

111. Plaintiffs Svitlana Wallace and A.W. have the right to be free from excessive force by officers when they arrest either with or without probable cause.

112. All Plaintiffs have a right to be secure in their houses and effects against unreasonable entry without a warrant by officers.

113. At the relevant time, the right to be free from excessive force, arrest without legal cause, and government entry into a home without a warrant was clearly established.

114. Defendant Magallanes and Holguin wrongfully used force against Plaintiffs Svitlana Wallace and A.W. when neither were not acting combative or aggressively toward them, fellow officers, or any other person.

115. Defendants Magalanes and Holguin wrongfully arrested Plaintiff Svitlana Wallace when they lacked probable cause to believe she had committed a crime, did not have a warrant for her arrest, had no exception to the warrant requirement for arrest, and Plaintiff Svitlana Wallace otherwise posed no imminent threat to Defendant, fellow officers, or the public.

116. Defendants wrongfully detained Plaintiffs A.W. and Michael Wallace when they lacked legal cause for a detention. Plaintiffs A.W. and Michael Wallace posed no imminent threat to Defendants, fellow officers, or the public.

117. Defendants Magallanes, Holguin, and Milks wrongfully entered into the Wallaces' home

without a warrant or exception to the warrant requirement.

118.  Defendant Magallanes wrongfully put his foot into the Wallaces' home, and not allowing them to close the door.

119.  As a direct and proximate result of Defendants' unlawful conduct set forth above, Plaintiffs suffered physical injury, pain and suffering, mental distress, fear, and emotional suffering in an amount to be proven at trial.

### COUNT III:  FIRST, FOURTH AND FIFTH AMENDMENT RETALIATION CLAIM

120.  Plaintiffs allege and reassert all prior paragraphs of this Complaint as though fully set forth herein.

121.  Plaintiffs had a First Amendment right to voice objection to log a complaint against the Las Cruces Police Department.

122.  Plaintiff A.W. and Svitlana Wallace had the First Amendment right to voice objection to the police actions against, them, their family, and their home.

123.  Plaintiff A.W. and Svitlana Wallace had First and Fifth Amendment rights not to speak to the officers or answer any of their questions.

124.  Plaintiff A.W. and Svitlana Wallace had the Fourth Amendment right to refuse to answer the door for the officers, to refuse the officer's entry into their home, and to refuse to come out of their home.

125.  Plaintiff Michael Wallace had the right not to have his home invaded by state actors without legal cause.

126. Defendants retailed against the Wallace's for having logged a complaint against officers at the Las Cruces Police Department.

127. Defendants retaliated against Plaintiffs Svitlana Wallace and A.W. for having recused to speak with them, refused their entry into the home, and refused to come of their home by entering their home without a warrant, using excessive force, arresting/retaining without legal cause, and initiating criminal proceedings against them (malicious abuse of process).

128. Defendants retaliated against Plaintiff A.W. for voicing her objection to the officers' action and by declining to speak to the officers or answer their questions by using excessive force against her, entering her home with about a warrant, detaining her, and initiating juvenile criminal proceedings against her (malicious abuse of process).

129. At the time, the right to be free from retaliatory arrests, detentions, excessive force, and unlawful entry into the home, and malicious abuse of process was clearly established.

130. As a direct and proximate result of Defendants' unlawful conduct set forth above, Plaintiffs suffered physical injury, pain and suffering, mental distress, fear, and emotional suffering.

COUNT V:

NEGLIGENT SUPERVISION AND TRAINING

131. Plaintiffs allege and reassert all prior paragraphs of this Complaint as though fully set forth herein.

132. Defendant, the City is a political subdivision of the State of New Mexico, located in Dona Ana County, New Mexico and is a person as defined by 42 U.S.C. § 1983.

133. The City is charged with the responsibility for appointing, supervising, training, instructing, disciplining, and promoting Las Cruces Police Department officers, including all individually named officer defendants.

134. The City has appointed, supervised, trained, instructed, disciplined and/or promoted officers in a manner that encourages constitutional violations, retaliation, false imprisonment, malicious abuse of process, and over use of force against civilians.

135. The City's policies were deliberately indifferent to the dangerous conditions their policies above created.

136. These policies led to the civil rights violations and torts against the Plaintiffs and to the damages suffered by the Plaintiffs.

## DEMAND FOR JURY TRIAL

137. The Plaintiffs demand a trial by jury.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs prays for judgment as follows:

    A.    Compensatory damages in an as yet undetermined amount, including, but not limited to, damages for violations of their civil rights, physical injuries, pain and suffering, humiliation and emotional distress.

    B.    Punitive damages in an as yet undetermined amount.

    C.    Reasonable costs and attorney's fees incurred in bringing this action.

    D.    Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*Electronically Submitted*

/s/ Margaret Strickland
Margaret Strickland, Esq.
MCGRAW & STRICKLAND, LLC
165 West Lucero
Las Cruces , NM 88005
Ph:   (575) 323-1529
Fx:   (575) 680-1200
Margaret@lawfirmnm.com
*Attorney for Plaintiff*